W. T. & J. MERRITT *vs.* LAMBERT.

A tender of the money due on a mortgage after the condition of the mort-
gage has been broken, does not turn what was before an equity of redemp-
tion into an absolute estate discharged of the lien of the mortgage money
which remains unpaid. But a tender of the money on the day it becomes
due is a compliance with the condition, and by the terms of the mort-
gage divests the whole interest or estate of the mortgagee in the premises.
Where lands were bid in by the Farmers' Fire Insurance and Loan Compa-
ny, under a master's sale upon the foreclosure of a mortgage given to the
company; *Held,* that it was too late for the mortgagor to redeem after
the premises had been actually sold by the corporation, by a valid and
binding written contract for that purpose, although the legal title had not
yet been actually transferred by deed from the corporation to the purchaser.

December 18.   THIS was an appeal, by the defendant, from an order of
the vice chancellor of the first circuit, directing the appoint-
ment of a receiver of the premises in controversy in this
suit.   The bill was filed to compel the specific performance
of a contract for the conveyance to the complainants of the
unexpired term in several leasehold lots in the city of New-
York, in exchange for certain freehold property in the city
of Buffalo; and the principal question in dispute between
the parties was whether the complainants could make a
good title to the defendants of the Buffalo property. The
facts upon which that question depended were these: The
title to the property was originally in O. Edwards, who
mortgaged the same to the Farmers' Fire Insurance and
Loan Company. That mortgage was foreclosed in chan-
cery, and the premises were sold by a master and bid in by
E. Tibbits, the president of the company, who took a con-
veyance therefor in his own name, in September, 1834, al-
though he in fact purchased the same in for the benefit of
the company. In March, 1835, the complainants entered
into a written contract with the Farmers' Fire Insurance
and Loan Company, to purchase of that company the mort-
gaged premises, so bid in by Tibbits, for $13,000 with in-
terest, one-third to be paid on the first of May then next,
and the residue within five years. And the company cove-

nanted that the complainants should have the immediate possession of the premises, and that the company would cause the legal title to be conveyed to the purchaser without any unreasonable delay ; Tibbits having died and the legal title being then in his executors, or his heirs at law. On the 29th of April, 1835, the complainants paid the company one-third of the purchase money according to the contract. And on the 30th of May, 1835, the executors of Tibbits conveyed the premises to the corporation to enable it to give a legal title to the complainants in pursuance of the contract, and the widow released her claim to dower. The company thereupon executed and tendered a deed to the complainants, which their counsel considered as insufficient to convey the legal title. And the complainants thereupon filed a bill against the company for a specific performance of the contract, before the vice chancellor of the first circuit ; in which suit the executors and heirs at law of Tibbits were made parties. In December, 1835, the vice chancellor decided and decreed that the legal title to the premises was in E. Tibbits at the time of his death, as a trustee for the corporation ; and that it descended to his heirs at law, who then held the same in trust for the company. A specific performance of the contract with the complainants was therefore directed ; and the heirs of Tibbits were decreed to join in the conveyance ; which decree was afterwards carried into effect accordingly. [*See Merritt* v. *Farmers' Fire Insurance and Loan Company*, 2 *Edw. Ch. Rep.* 547.] By a proviso in the act incorporating the company it is declared, that where the corporation has become the purchaser of any real estate on which it has made loans, the mortgagors shall have the right of redemption of any such property on payment of the principal and interest and costs, *so long as it remains in the hands of said corporation unsold*. And some time in the summer of 1835, Edwards the mortgagor having discovered, by the institution of the suit before the vice chancellor, that Tibbits held the premises in the character of a trustee for the corporation, he tendered to the company the amount of the debt and costs and the interest, and demanded a release or reconveyance of the

premises. And he afterwards brought an ejectment suit to recover possession of the premises, and gave the complainants notice of his claim before the execution of any conveyance to them under the decree of the vice chancellor; which ejectment suit was still pending and undetermined at the time the application for a receiver was made.

*M. T. Reynolds,* for the appellant.

*Julius Rhoades,* for the respondents.

THE CHANCELLOR. If the complainants have a perfect title to the Buffalo lots, so that they can give a title to the defendant discharged of any legal or equitable claim thereon in favor of Edwards, then there is no doubt that the order appealed from is right and ought to be affirmed. The situation of the property in New-York is such that a receiver is necessary, to collect the rents and profits, pay up the ground rents, and keep down the interest of the large mortgage thereon, and thereby to save the property from being lost pending this litigation. I shall therefore proceed to examine the only real questions in the case.

For the purpose of this suit I shall take it for granted that Tibbits actually held the legal title, under the master's deed, for the benefit of the corporation, as a resulting trust, in consequence of his taking the deed in his own name and paying the purchase money out of the funds of the company. For this purpose it is necessary to presume he took the conveyance in his own name without the consent or knowledge of the company, to whom the purchase money belonged, or in violation of his trust as an officer of the corporation; so as to bring the case within the provisions of the sixty-third section of the article of the revised statutes relative to uses and trusts. (1 *R. S.* 728.) For if the conveyance was taken to himself with the knowledge and by the authority of the directors of the corporation, the fifty-first section of that article gives the property to him absolutely, for his own benefit. And the corporation in that case would only have a personal claim on him, for the purchase money, to the ex-

tent of his bid, or the amount of its funds which had been applied towards the purchase.

Even if the legal title to these premises had been in the corporation, for its own benefit, at the time of the tender by Edwards, I do not think a mere tender of the money, without actual payment, could have the effect to divest the legal title; so as to enable him to maintain an ejectment suit, without filing a bill to redeem, under this provision in the act of incorporation of the company. I am aware that in the case of *Jackson* v. *Craft*, (18 *John. Rep.* 110,) the supreme court decided that a tender of the mortgage money forever discharged the lien on the land, and left the mortgagee to his mere personal remedy against the original mortgagor. But that case I believe has been doubted by the profession ever since the report of the decision appeared; so far as relates to an absolute discharge of a mortgage by the mere tender of an amount which turns out to have been sufficient; and where the condition of the mortgage had been broken by the non-payment of the money at the day of payment prescribed in the instrument. And I am not aware that the decision upon that point has been followed in any subsequent case. The mistake of Mr. Justice Woodworth who delivered the opinion of the court, arose from the misapplication of a correct principle; but which is imperfectly stated in Bacon's Abridgment, to which he refers. It is there said "If A. borrow one hundred pounds of B. and mortgage land to B. with condition for payment thereof, in this case if A. tender the money and B. refuse to accept thereof, the land is discharged; but the debt which existed before the mortgage remains, and may be recovered in an action." (*Bac. Abr. tit. Tender, F.*) He also refers to Coke upon Littleton where the same principle is laid down in Lord Coke's note in nearly the same words. Indeed the language of the 338th section of Littleton himself, to which that note is attached, is calculated to carry the impression that a tender of the mortgage money and interest *at any time*, was sufficient to defeat the lien of the mortgage and revest the legal estate in the mortgagor. But by a reference to the previous sections it will be seen that both Littleton

and Coke were speaking, in this subsequent section, of a tender at the day; so as to revest the legal estate by a literal compliance with the condition of the mortgage, so far as it was possible to do so when the mortgagee would not recieve his money although tendered at the day. (*See Coventry's Readable edition of Coke upon Littleton*, § 334, 335, 336, 337, *and notes*.) The correct principle, as intended to be laid down by Littleton and Coke, is that if there is a tender of the mortgage money at the time and in the manner prescribed in the condition of the mortgage, and the mortgagee refuses to receive it, the condition is complied with; and the estate reverts back to the mortgagor by the express terms of the instrument. So that if the mortgagee is so unwise as to refuse his money when it is tendered at the time and place and in the manner prescribed in the instrument itself, he necessarily must lose his security upon the land which was merely collateral to the debt; although the mortgagor may be still liable for the money, where there is an existing indebtedness. But if the money is not paid by the day, the condition upon which the land was to revert to the mortgagor has not been complied with; and the interest of the mortgagor in the land is then reduced to a mere equity of redemption. And an actual payment, and not a mere tender or offer to pay then becomes necessary, to discharge the legal and equitable lien of the mortgagee upon the land. Indeed by the common law the actual payment of the mortgage money and interest, after the day, was not sufficient to revest the legal title in the mortgagor or his assigns; but a reconveyance of the premises was necessary. And for these reasons it is that the mortgagee, or his assigns, or subsequent incumbrancers upon the mortgaged premises, are driven to a bill to redeem, where the mortgagee refuses to receive what is equitably due to him. But this could not be necessary in any case if a mere tender of the amount due, after the mortgage has become forfeited, would have the legal effect of discharging the mortgaged premises from the lien of the mortgage. This being the situation of the mortgaged premises before the foreclosure and sale but after the day of payment was past, the legislature probably

1838.

Merritt
v.
Lambert.

did not intend to give the mortgagor any greater rights in relation to the redemption after such sale than he before possessed. The legal title is therefore unquestionably in the complainants, and they are at law entitled to retain the possession of the premises notwithstanding the tender.

If the mortgaged premises were held by Tibbits as the trustee of the corporation by virtue of a resulting trust, in equity the land belonged to the corporation ; and upon the equity of the statute the corporation was the purchaser of the premises under the decree of foreclosure, so as to give the mortgagor the right to redeem so long as the property remained in the hands of the corporation unsold. I am satisfied, however, that, upon a true construction of this provision in the act of incorporation, a valid and bona fide sale of the premises in equity, and especially where the purchasers had paid one third of the consideration before there was any attempt to redeem, was sufficient to deprive the mortgagor of the right to redeem the premises from the master's sale. The moment the contract for sale was executed with a bona fide intent to carry that contract into effect according to the terms thereof, accompanied as it was to be by an immediate delivery of the possession to the purchasers, the complainants in this suit had a right to insist upon a specific performance of the contract. And the premises no longer remained in the hands of the corporation unsold, within the intent and meaning of this provision in the act of incorporation. The right of the mortgagee to redeem was therefore gone, although the legal title still remained in the heirs of Tibbits, or in the corporation, at the time of the tender in the summer of 1835. And a notice to the complainants of a claim of a right to redeem, when no such right in fact existed, could not prevent them from afterwards clothing their equitable estate in the premises with the legal title, by taking a conveyance under the decree for a specific performance of the contract of purchase. They have therefore a perfect title to the Buffalo lots, free from any legal or equitable claims thereon, so far as appears upon the papers now before me. And if so, the complainants will in the end obtain a decree for a specific performance of the contract with

the defendants. The fact that an ejectment suit has been brought by a third person who has no legal or equitable claim to the premises, certainly forms no valid defence to the present suit; although the defendant had not heard of that ejectment suit at the time he agreed to purchase.

The order appealed from is therefore affirmed with costs.