The Assistant Vice-Chancellor :
The record was imperfect. By the' amendment Bruen appeared on the face of the bill merely as assignor' of the mortgage, without a charge of his claiming any interest, or showing any ground- for making him a party. He answers hbwe'ver,- by setting up a matter, which if established, defeats the title of the complainant entirely, and shows that he continues-the owner'' of the bond and mortgage. The replication-has sufficiently put this matter in issue, raising the question whether the complainant is lawfully the owner' of the securities. To solve that question,- another has to be determined; whether, viz: the assignment executed by George W. Bruen as attorney of Matthias Bruen legally transferred the instruments'.
The case is one of no little difficulty; and it is rendered-more doubtful from the excessive caution of both parties in omitting pertinent testimony. On the one side the complainant does not furnish any proof of an actual payment,which would greatly aid his case—does not produce the bond and mortgage—does not state in his bill that they are in his possession—avoids the allegation that the assign- - ment was by an attorney lawfully authorized; but avers that it was made by Matthias Bruen in consideration of *362 the money being paid to him, and omits to show any act of G. W. Brnen in reference to the securities comprised in the power, done after the alleged revocation, and either ratified by Matthias Bruen, or passively permitted. On the other side, this defendant has not proved notice to his agent of the revocation of the power ; nor the least effort to reclaim any of the securities out of his hands; nor made any attempt to explain his apparent inactivity for a period of two years. Testimony to any of these matters would materially have aided the rightful decision of the cause. I have no right or wish, however, to censure the counsel of either party for the course thus pursued. As observed by Lord Chancellor Hart, the court is not entitled to expect in them the advocates of abstract truth. I only regret the consequences ; viz: a" greater difficulty in the questions, and a greater probability' of an erroneous decision on my part'.
It appears from the recital in' the instrument of revocation, that on the 19th of December, 1833, Matthew Bruen, of Perth Amboy, New-Jersey, executed a power of attorney to G. W. Bruen, of New-York, empowering him to manage and conduct his business of what nature or kind soever, which power of attorney was recorded in the office of register of the city of New-York. Liber 3, p. 71.
On the 16th of March, 1836, Matthias Bruen executed another power of attorney to G. W. Bruen, authorizing him to assign or execute satisfaction pieces for the therein described mortgages, or any thing requisite for these purposes, A list of mortgages was subjoined, stating the names of the mortgagors, the dates, amounts, and places and books of record. Among these is the mortgage in question, specified as recorded in Kings County. One of the mortgages was recorded in New-York, one in Orange County, and the rest in Kings. This power of attorney was duly acknowledged on the 18th of March, 1836, but not recorded until the 17th of July, 1838.
On the 7th of July, 1836, Matthias Bruen executed an instrument of revocation, in which, after reciting the power of attorney of 19th December, 1833, fully, with its record, *363 lie declares that for good causes he revoked and countermanded, and to all intents made null and void the said writing or letter of attorney, and all powers therein granted, “ and all other powers of attorney whatsoever, given by “ me to the said George W. Bruen, and all authority or powers therein whatsoever contained.”
This instrument was recorded on the said 7th of July, 1836, in the register office, New-York.
On the 18th of July, 1338, the assignment in question was executed, signed “ M. Bruen, by his attorney G. W. " Bruen.”
These are the only facts in the case; the documents themselves being produced under a stipulation, and no other evidence adduced.
I. In the first place the question has been argued upon the broad ground that the actual revocation of a power, in unambiguous terms, clearly denoting the intention to annul it, is sufficient of itself to avoid the acts of the attorney, whether the party dealing with him knew of such revocation or not. On the other side, the complainant’s counsel insists, that the party must have notice of the revocation, as well as the agent. It is obvious that there is great risk of injustice by the adoption rigidly of either of these rules. The party dealing with an agent under an apparently subsisting power exhibited to him, would often be wronged if bound by an unknown revocation. On the other side, as actual notice in a great mass of cases must be impracticable, there would seem no mode open to a principal to preclude the ruinous exercise of a power once conferred, but expressly annulled.
It is a common place of the law, that a power of attorney not coupled with an interest, as it arises entirely from the will of the party, may be superseded at his will. Ex-tinetum est mandatum, finita volúntate. ■ Had then this revocation been actually brought home to the complainant’s knowledge, it would have been sufficient. It may be useful also to advert to a distinction, known in the law for several purposes, between a general and a special agent. The act of the latter, for example, *364 must be strictly within the letter of his power. (Rossiter v. Rossiter, 8 Wendell, 494. Andrews v. Kneeland, 6 Cowen, 354. See also, Sherwood v. Mowrick, 5 Greenleaf, 302. 2 Kent's Com. 620.) The position of the counsel for the complainant is supported by nearly-the whole .strength of the elementary writers. Iff particular the learned Justice Story states .that the -revocation takes effect as to the agent from the time that it is communicated to him, and as to third parties, from the time.it is made known to them; and not before. (Story on Agency, 491. See also, Long on Sales, 404. 2 Kent's Com. 644, 3d ed. 2 Livermore on Agency, 306—310. Smith's Mercantile Law, p. 72.) The various codes of the nations governed by the civil law, contain the same rule with equal explicitness. See the passages cited by Justice Story, and by Mr. Livermore, p. 306, &c. See also, Code of Louisiana, 613. art. 2997, 2998—3002. Code Napoleon, p. 542. London, 1825.
But I do not find in either of these writers an attempt to define what shall be considered as amounting to notice. Certainly if they are supposed to declare that actual personal notice is requisite, the position would be inaccurate.
All the adjudged cases cited by these writers upon this point of notice are the following : Anon v. Harison, Hayard v. Treadwell, Salte v. Field, Morgan v. Stell, Harper v. Little, Spencer v. Wilson, Bowerbank v. Morris.
In Anon v. Harison, (12 Mod. 346.) A.servant had power to draw bills of exchange in his master’s name, and afterwards was turned out .of his service. Holt, C. J. If he drew a bill in so little .time after that, the world cannot take notice of his being out .of service; or if he were a long time out of his service, but kept so secret -that the world cannot take notice of it, the bill in those .eases shall bind the master.
In Hayard v. Treadwell, (Strange, 506,) a.servant was sent with an order for iron to a party with whom the master dealt, and the master paid for what was delivered *365 to .him. He again sent him with money, which he kept to his own use. The master was held responsible.
In Morgan v. Stell, (5 Binney’s Rep. 305,) a power of attorney to lease lands had been given to 0. & D. under which 0. alone acted, and the power was recorded. About four years afterwards another power was executed to C., D. and -B. jointly, which was made known to 0. but not recorded, nor any public notice given of it, nor was it acted upon. C. continued on the estate, and made leases as .before, and among others leased to the defendant. It was held that as between the principal and C. the latter power revoked -the first, but not as to the defendant. The Ch. J. says it seems unjust that when a person has authorized another to act for him by a writing, which is left in possession of the agent, third persons should be affected by a revocation of which they have no possibility of notice. It was enough to say there had been great negligence. That a.court and jury could in all cases judge of the reasonableness of the notice.
Yeates, J., observed, “ that if the first power was rer “ corded, the countermand or revocation should be re- “ corded also, or sufficient publicity given on or near the “ lands. That no precise rule could be safely laid down u in such cases. Every case must be decided on its own “ particular circumstances, though great hardship may “ arise on either side of the question. Where -the counter“.mand is not generally known, nor can be traced to the “ knowledge of the fair lessee or purchaser, and where he “ cannot justly be charged with laches or negligence as to receiving information, he ought to be protected.”
In Salte v. Field, (5 T. R. 215,) Justice Buller expressed the opinion, that acts done by an agent before he had notice of the revocation of his letter of attorney are good, and the principal cannot avoid them where they are to his disadvantage and done bona fide.
In Harper v. Little, (2 Greenleaf, 18,) Ch. J. Mellen said, “ it is admitted that a revocation of a power not “ coupled with an interest will not defeat and render void “ those acts which are done in pursuance of it, and prior *366 " to notice of such revocation being given to the attorney. “ Authorities are clear on this point.”
The cases of Spencer v. White, (4 Munf. 130,) and Bowerbank v. Morris, ( Wallace’s Rep. 126,) do not require a particular notice.
A few other cases besides those cited by these authors may be noticed. Vivion v. Wild, (2 Brownlow, 291.) If a man submit to the award of another and then revokes that authority, but the award is made before notice ,of a revocation given to the arbitrator, the award is good. So, if a letter of attorney is given to make livery, and before it is made the power is revoked, yet if made before notice, it avails. Without notice there is no revocation, where revocation is the act of the party.
‘Bernard v. Torance, (5 Gill <Sp Johns. 283.) When the proposal of an authorized agent to purchase merchandise is accepted, and substantially complied with by the vendor, the principal is bound, though between the offer and the acceptance the principal revokes his author rity; and this is so whether the principal is known to the other party or not. The party dealing with the agent knew that he was acting for others, though he did not know the names of the principals. But it was also held that the agent could not vary the offer by new stipulations, or dispense with any conditions of the offer. In .other words he could not make a new agreement.
From thege authorities I deduce the rule, that ,the .question in every case of the asserted revocation of the power of a special agent, depends upon its own peculiar circumstances. That there may be facts in the case rendering it improper for the party to deal with the agent; facts, tending to fasten upon him the consequences of notice, though short of personal knowledge; that if, with the exercise of ordinary caution, he would have been led to the knowledge of the revocation, it is the same as if he possessed it; and that the general principle of the court applies, viz : whatever is sufficient to put him upon inquiry is equivalent to actual notice.
*367 The passage from Domat, (Book 1, tit. 16, § 3, art. 9,) cited by Justice Story, (p. 493,) appears to me to contain the true doctrine. “ The powers of factors and agents are de- “ termined by their revocation. But if, after they are re- “ called, they treat with persons who know nothing of their “ being recalled, what they harm transacted shall oblige the “ master, unless the revocation has been published, if it was “ the custom so to do, or that by other circumstances, the “ person who treated with the factor, might have known that “ he ought not to' have treated with him.”
It maybe remarked upon the doctrine of thecivil law,that many of the leading examples of the rule requiring notice are where the agent is empowered to receive money. (Pothier by Evans, n. 474, and the passage cited by Justice Story, p. 492.) Now in such a case it is required that the principal should give notice to the debtor. This he is perfectly able to do. He knows his own debtors whom he has empowered his agent to call upon. In the case before me the debtor has been forbidden to pay.
One other rule of the civil code has some application here. The reclamation of the vouchers or securities placed in the hands of the agent is an implied revocation. (Pothier de Mandat, n. 118.)
In examining the present case under the guidance of these authorities and principles, the first question is as to the existence of any notice, or the force of other circumstances, irrespective of the registry. And here I can find nothing to defeat the plaintiff’s claim.
There was no actual notice, and there was no publication. There was no attempt to reclaim the securities; nor to procure the surrender of the power; no notice proven to have been given to the attorney, and none, until after the transfer, to the debtor—an interval of two years. Indeed in strictness there is not proof of any notice not to pay, as between the complainant and Matthias Bruen. The presumption is, that the securities were delivered with the assignment. In the absence of all proof, I must assume that possession followed the legal right. Under this view of the case the assignment must be sustained.
*368 II. The second, and atf important question is,- as- to the effect of the registration of the' power of attorney, and the revocation as constructive notice.
The power of attorney was dated, as before observed, on the 16th, and acknowledged on the 18th of March, 1836, and was recorded on the 17th of July, 1838, at forty-five minutes past 1. The revocation was dated on the 7th of July, 1836,- and recorded on the same day. The assignment was made on the 18th day of July, 1838-, and is not recorded.
By the 24th and 25th sections of the áct, ( 1 R. S. 760,) an instrument is to be considered as recorded from the time of the delivery to the clerk for that purpose,- and he is to endorse upon the conveyance a certificate stating the time, and the book ánd page of the record. In practice the clerk makes a memorandum upon the instrument at the moment of delivery, and when the entry in the book is made,- perfects his certificate.
While it would be inconsistent with experience to suppose that the full certificate was endorsed on the power of attorney upon the 18th day of July, when the delivery was only on the 17th, at near 2 o’clock, I am bound- to hold that the paper was of record on the 17th; and further, it is clear that the memorandum of the clerk must have been upon it at the time mentioned.
. Now, no rulé is more explicit than that which requires a party dealing with a special agent, to make himself fully acquainted with the extent and limitation of his power. As a result of that rule, I hold, that he is chargeable with notice of the actual situation of that power, where it is contained in a written instrument,- at the very time he is entering into a transaction with the agent. He may not depend upon a previous inspection. It may in the interim have been modified or even cancelled. He has a right to its production at the time,- and he is bound by it as it appears at the time. Hence, when on the 18th of July the complainant took his assignment, he is to be assumed to have examined the power, and then he found that it was *369 made a record in the county of New-Yorlc. Notice of this . fact I hold to be in judgment of law brought home to him.
But it has been established as a rule, that the recording ° an instrument which it was not necessary to record does not amount to constructive notice; for example, under our former acts, an assignment of a mortgage. The law will not intend that to be known, for the existence of which there is no legal necessity. (James v. Morey, 2 Cowen, 296.)
It should be noticed that in James v. Morey, both Justice Woodworth and Justice Sutherland take notice that the registry act of January, 1794, in relation to military bounty lands, had no application to the case. By that act, all deeds and conveyances, whereby those lands might be affected at law or in equity, were to be recorded. (Webst. Ed. Laws, vol. iii. p. 45.)
The first section of the present law (1 R. S. 756—762,) provides, that every conveyance of real estate shall be recorded in the office of the clerk of the county where such real estate shall be situated ; and if not so recorded shall be void as against any subsequent purchaser. By the 38th section the term “ conveyance” embraces every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged, or assigned ; or by which the title to any real estate may be affected in law or equity; except last wills, leases for a term of years, and executory contracts for a sale of lands.
It is obvious, both from the language of this section and from the 41st section, (1st edition,) that an assignment of a mortgage is within the act, and is to be recorded. It was so intended by the revisers. (Notes, vol. iii. p. 607.) Even before the act it might be recorded, and the record was evidence; (Jackson v. Roberts, 1 Wendell, 485;) though it was not constructive notice.
But I am inclined to think that a power to assign mortgages is not required to be recorded ; although it seems also within the comprehensive language of the act. Letters of attorney to convey lands are excepted. (R. S. 762. § 39. Notes Revisers, vol. iii. p. 607.) And certainly, if *370 it is not necessary to record the power it cannot be to record the revocation. The conclusion appears to be, that if a power ought to be recorded, it must be done in the county where the lands he, or it is not constructive notice. But in the present case, as neither the power was recorded in Kings County nor the revocation, the result is, that if a record is necessary there is no constructive notice of the revocation from the record by itself, because it was not in the proper county; and if recording is not prescribed, then a record in Kings would stand upon no better footing than a record in New-York. The effect of that record then, not as a requisition of law, and hence constructive notice, but as a fact in the cause, is to be examined.
Before doing this, however, another section of the statute should be considered; because one construction of it will decide the case.
By the 39th section, (p. 762,) the 38th section is not to be construed to extend to a letter of attorney to convey lands, as agent or attorney for the owner, but every such letter of attorney, when duly acknowledged or proven, may be recorded in the clerk’s office of any county, in which any real estate, to which such power relates, may be situated, and the record or transcript may be read in evidence.
The result of these provisions is, that it is not essential that a power of attorney, to convey lands, should be recorded as well as the deed by the attorney, in order to prevail against subsequent purchasers—although, for the purposes of evidence, it may be recorded. (See Revisers' Notes, vol. iii. p. 607.) And I conclude that for such purposes, a record of the power in one of several counties in which lands lie, of which it empowers the conveyance, is sufficient. That, upon a trial in another county, the trans-script could be read, although not recorded in that county. Hence, also, the revocation being recorded in that county would be sufficient.
Nor can the least difficulty arise from this construction. A purchaser sees either the original power, with the record endorsed upon it, or a 'trknscript. His search for a revocation is directed, and need only be directed, to that one *371 county in which the record is made. I think it also clear that the converse of the proposition, contained in the 40th section, is the law. The recording of an instrument of revocation in the same county in which the power is recorded, shall be deemed a revocation ; and if so, it must be a revocation from the date of the record.
Then if a power to assign mortgages can be regarded as a power to convey lands as attorney for the owner, the reasoning would be invincible. A record of the instrument of revocation in the county in which the power was recorded would annul the power, and all would be chargeable with notice of such annulment from the date of the record. Can it he so regarded? The phrase is, “ a power “ to convey lands as agent or attorney for the owner of “ such lands.” It appears, by the revisers’ notes, that as the statute originally passed, the words “as agent or attor- “ ney for the owner of such lands,” were not in the act; but by an act passed 10th December, 1828, they were directed to be inserted. Under our doctrine as to mortgages, a mortgagee is not the owner of the lands. Until he takes possession, at least, he has but a chattel interest— and the supreme court has lately gone the length of holding, that a tender after forfeiture revests the whole title so entirely as to extinguish the mortgage, and leave only the personal liability. The chancellor had decided otherwise. (Merritt v. Lambert, 7 Paige, 344.)
Again, all proceedings against the land by ejectment are forbidden by statute. (2 R. S. 312, § 57. See Jackson v. Meyers, 11 Wendell, 538.) It seems nearly a contradiy, tion to call him an owner who is prohibited from recovering the land.
Under the English registration act for the county of Middlesex, an assignment of a mortgage was required to be registered, and was as effectual a notice as a deed. (Williams v. Powell, 4 Vesey, 390.) By the English doctrine, the assignee of a mortgage is in fact the grantee or legal owner of the land. Hence a registry was as much required for such an assignment as for an unconditional deed; and the decision in our state, before the Revised *372 _ Statutes, that an assignment of a mortgage need not be recorded, could proceed only on the ground, that there was no conveyance of the land. The registry of mortgages, it will also be recollected, was regulated by a separate statute.
For these reasons I cannot consider that a power to , assign mortgages stands upon the same footing as a power to convey lands, under the 39th and 40th sections of the act. If it had been so, a decisive, and, in my opinion, a salutary rule would have been found to govern the present cause.
The case then is to turn upon the point of presumptive notice of the revocation, or rathér upon the point that the complainant had knowledge of such facts as bound him to inquire further before he consummated his bargain; and that the inquiry which those facts necessarily suggested would have led him to the easy discovery of the revocation.
It is to be observed that there is not in this case an effort to bring the doctrine of notice to the overthrow of a registered instrument. But in my opinion this circumstance is of no moment. It is true that the learned commentator upon American Law, in speaking of such a case, says, “ that the notice which barely puts the party upon “ inquiry is not sufficient. The inference of a fraudulent' " intent affecting the conscience must be founded on clear “ and strong circumstances. The inference must be neces- “ sary and unquestionable.” (4 Kent’s Com. 172.)
With the greatest respect, this position is not accurate. There is no distinction as to the extent of notice which will prevail in favor of a prior deed, whether the subsequent one is registered or not. There is no difference whether the notice relates to a prior incumbrance, a naked equity, or a full conveyance. The same circumstances from which implied notice can be deduced will avail in favor of the -charge legal or equitable, the incumbrance, or the absolute deed, against the subsequent conveyance registered or unregistered. The language of Chancellor Walworth) in Tuttle v. Jackson, in the court of errors, *373 (6 Wendell, 226,) is, “ if the subsequent purchaser knows " the unregistered conveyance at the time of his purchase, “ he cannot protect himself against that conveyance, and “ whatever makes it his duty to inquire as to the rights of others, is considered legal notice to him of these rights.” See also the passage at page 227. In that case the open possession of the premises was held constructive notice of the rights of the occupier against a registered deed. In Grimstone v. Carter, (3 Paige, 436,) the doctrine is repeated, that no distinction exists upon this question of notice of a prior right, whether the subsequent conveyance is registered or not. And the case is stronger, because the vice-chancellor had made his decision upon the ground of such a distinction.
Again, the decision in Dunham v. Dey, was reversed unanimously in the court of errors, upon this very point of the sufficiency of the notice. (15 Johnson’s Rep. 567.) The opinion of Platt, Justice, is very clear and instructive.
How are the cases upon notice to an agent, untraced to the principal, to be supported upon the distinction contended for ? Take an early and a leading case—Kirk v. Abney, Nelson’s Rep. 59. A contract was made by Rendell with Merry, to sell him certain lands. Abney, the father, afterwards purchased the same- of Rendell, on behalf of his son, and the conveyance was made to the son. Merry filed his bill for relief, charging notice in both the Abneys of his contract. The son plead his purchase bona fide for valuable consideration without notice. But it was held that notice to the father was notice to the son, and should affect him.
This case was before the passage of any registration act, but I take it to be unquestionable law at this day in the case of a recorded deed. In fact, the great case of Le Neve v. Le Neve, (3 Atk. 649,) is precisely the same, though less strong upon the point of agency, and was decided upon the Middlesex registration act. Now if the case must go as high as fraud in the party holding the registered deed, how can such decisions as these stand, except upon excessive refinement of reasoning? No *374 actual knowledge was brought home to the party—nay, the conclusion is, that none such existed, and he stands exempt from every fraudulent intent. See further, Chandos v. Brownlow, 2 Ridg. P. C. 428. The whole object of the registration acts is to give protection against secret instruments, not those of which the party has knowledge, or is reasonably to be presumed to haye knowledge.
The doctrine, then, advanced by the Chancellor in Dunham v. Dey, (2 Johns. Ch. Rep. 182,) and by Justice Woodworth, in Jackson v. Van Valkenburgh, (8 Cowen, 260,) is, I appprehend, overturned. The rule which Chancellor Kent has so well stated in another passage, (4 Com. 179,) is as applicable to a registered as to unregistered conveyance. “ The general doctrine is that “ whatever puts a party upon inquiry amounts in judg- “ ment of law to notice, provided the inquiry becomes a “ duty, as in the case of purchasers and creditors, and “ would lead to the knowledge of the requisite facts, by the exercise of ordinaiy diligence and understanding.” Then I hold that the same proof would haye sufficed to charge the complain ant, had the instrument been registered, as will now suffice ; and the same degree of proof is of course now necessary.
With regard to the record being made in an office where it was not necessary, or being recorded when if was unnecessary to do so, it is to be carefully observed that in all the cases upon this head, the question was whether the record alone was constructively notice. The point does not arise upon the fact of an actual search pr actual knowledge of the paper being recorded, although in Latouche v. Dusenbury, (1 Sch. & Lefroy, 157,) Lord Redesdale adverts to such a case.
Thus in the leading case of Morecock v. Dickens, (Ambler, 678,) Wilson being entitled to a lease, assigned it to Morecock for securing £800. He afterwards delivered it back to Wilson to enable him to borrow money upon it, out of which he was to be paid. It was repewed when in Wilson’s hands. Upon a settlement of accounts it was agreed that the new lease should remain ps security *375 for £800, and the deed containing this agreement was registered. Afterwards Wilson mortgaged the premises to Dickens for £800, and delivered him the lease. Dickens was decreed to have a preference, notwithstanding the registry, not having had actual notice. Lord Camden doubted, however, the principle. It is needless for the present purpose to enter upon the question whether this case is law. It has been much questioned and much confirmed. (See Coventry's Powell on Mortgages, 629, n. Bushell v. Bushell, 1 Sch. & Lef. 90. Pentland v. Stokes, 2 Ball & Beatty, 75. Daly v. Kelly, 4 Dow's Par. Ca. 436. Stuart v. Ferguson, 1 Hayes' Rep. 471. Parkurst v. Alexander, 1 Johns. C. R. 394.) There was no search, nor any fact to induce a search.
And in Hester v. Fatner, (2 Binney, 40,) and all the cases cited by Chancellor Kent, (2 Com. 174, n. a.) the question was exclusively upon the force of the registry in itself, not connected with any facts to show that the. registry was searched, or known, or the party led to it.
Here the assignee finds upon the power of attorney which is the basis, of his title, an endorsement that it was recorded in a particular office. He is aware, by the statute of 1833, (session 56, cap. 271, § 9,) that for the purposes of proof, this record is proper and valid. A moment’s search then, in the same office, would have shown him that the creator of the power had recalled it. It appears like the neglect of very ordinary caution to omit such a search. Still it involves the broad position, that knowledge of an instrument essential to title being recorded in a particular office, where it was not necessary to record it for the purpose of constructive notice, imposes the duty of searching that office. I am not prepared to adopt that position nakedly, or to decide the case upon it. The case of Hodgson v. Dean, (2 Sim. & St., 221, Coventry's Powell on Mortgages, vol. 2, 631, a,) bears upon this question. A mortgagee had caused a search to be made from a particular period in a registry county. It was admitted that he was not obliged to search the registry at all. The register returned that there was nothing affecting *376 the estate in question. The settlement opposed to his title had been registered previously to the period fixed for his search. The Vice-Chancellor said: “ He was not bound “ to search as is admitted. This is not a case therefore in ' “ which constructive notice can prevail. A notice to affect “ him must be an actual notice. It is plain that he had “ none such. Where a search is- generally admitted or “ proven, it will be intended as a rule of evidence, or presumption, that the party making the search had notice “ of the whole contents of the registry. But that is not “ constructive notice. It proceeds upon a different principle. But here the circumstances exclude such pre- “ sumption.”
On appeal the lord-chancellor held the same doctrine. See also, Jackson v. Post, 15 Wendell, 588.
But to recapitulate. The complainant takes under a power, known to him to be recorded in a particular office, and then in point of fact annulled. The act of annulment was upon record in the same office. He does not allege the possession of the securities professedly transferred to him. He does not give the least evidence of payment of the consideration, though he knows of the denial of his right. He neglects to register his assignment, thus exposing himself to the possible intervention of an honest purchaser. And he omits a search, which, although not demanded of him, no prudent man would ever have dispensed with. Under such circumstances, I am not prepared to give him his relief. But it is true that his case may not have been put forth in its proper strength ; and if this has arisen from the over confidence or slip of counsel, he should not be prejudiced.
I consider that justice will be best done by permitting the complainant to file a supplemental bill, making the charges that the bond and mortgage were delivered to ‘ him, and that he paid or secured the purchase money, with such other allegations as he shall be advised, I specify these allegations because if made out in proof they will turn the scale in my opinion. It may turn out that the assignment was in consideration for a debt due by G. W. *377 Bruen, in which case a new question will arise. Costs to abide the future decision of the cause. (Sheppard v. Morril, 3 Johns. C. R. 428. Bowen v. Faley, 6 Paige, 52.) Or the complainant may elect to dismiss the present bill without costs, and without prejudice to his right to file such new bill as he shall be advised touching the matters in controversy. The complainant to file such supplemental bill or make such election by writing filed, with the clerk of this court, within twenty days from the service of a copy of- this order, or his bill to be dismissed out of this court, but without costs.