The only question involved in the case is, whether the tender made by the defendant Cady, under the circumstances, was effectual to extricate the premises in question from the lien created by the mortgage of Blunt to Miller. This tender was made after the day provided in the bond and mortgage for the payment of the money, which is called the law day. If the sum tendered was sufficient in amount, and was made to the proper person, the question is reduced to the single point whether the lien of a mortgage is, ipso facto, discharged by a tender of the amount due made after the law day; because, if it is, there is no necessity, in an answer setting it up, of the allegation of touttemps prist, or of any evidence to show that the tender has been kept good, neither of which is contained in the present case; but the defendant *Page 368 
relies solely upon the fact of a tender and refusal as equivalent to payment, for the purpose of extinguishing the lien of the mortgage.
If a tender has the effect in any case to release the lien, it produces that effect the moment it is made, whether accepted or refused. If accepted, it is a payment; if refused, it is the folly of the holder of the mortgage, and the lien is gone and cannot be restored by his subsequent change of mind and offer to receive the money tendered. This must be so; otherwise, the tender would not discharge the lien. It is quite different from the case of an ordinary plea of tender at common law, for the purpose of stopping interest and preventing costs, in an action for money due on contract, in which the plea must contain the averment of tout temps prist, and where a replication of a subsequent demand, before suit, of the money tendered, and refusal by the defendant, would be a good answer to the plea.
In the case of a mortgage which is collateral to the debt, it is agreed that a tender may be made by the person owning the equity of redemption, which will extinguish the lien of the mortgage forever, without affecting the debt. The primary object of a foreclosure suit is to enforce the lien, and if that is met by a sufficient tender, the cause of action is gone and cannot be restored by a subsequent demand and refusal. It is important, therefore, to consider whether the tender in the present case, being made after the law day, if good in other respects, had the effect to discharge the lien of the mortgage.
In the case of Jackson v. Crafts (18 Johns. R., 110), it was decided that the tender in that case, which had been made long after the time appointed in the mortgage, had the effect to discharge the land from the lien of the mortgage. The question of the time when the tender was made, does not appear to have been raised; nor does the distinction between a tender made on the day, and one made afterwards, appear to have been considered by the court. The authorities cited and relied upon by Judge WOODWORTH, who delivered the opinion of the court, are, Bacon's Abridgement, title Tender (F.); Coke on Littleton, *Page 369 
209 b, section 338; Id., 207 a, section 335; and 20 Viner, title Tender, n, section 4. These authorities establish the principle that a tender at the time and place, according to the condition of the mortgage, will discharge the lien. They prove nothing more, as is clearly shown by the Chancellor, in Merritt
v. Lambert (7 Paige, 344), and by Senator JOHNSON, in Post v.Arnot (2 Denio, 344-357). The passages referred to in Coke on Littleton will be found in Thomas' edition, volume 2, pages 58 and 60.
In Merritt v. Lambert (supra), the Chancellor says: "The correct principle, as intended to be laid down by Littleton and Coke, is, that if there is a tender of the mortgage money at the time and in the manner prescribed in the condition of the mortgage, and the mortgagee refuses to receive it, the condition is complied with; and the estate reverts back to the mortgagor by the express terms of the instrument. So that if the mortgagee is so unwise as to refuse his money when it is tendered at the time and place and in the manner prescribed in the instrument itself, he necessarily must lose his security upon the land, which was merely collateral to the debt; although the mortgagor may still be liable for the money, where there is an existing indebtedness. But if the money is not paid by the day, the condition on which the land was to revert to the mortgagor has not been complied with; and the interest of the mortgagor in the land is then reduced to a mere equity of redemption, and an actual payment, not a mere tender, then becomes necessary to discharge the legal and equitable lien of the mortgage upon the land." In theFarmers' Fire Insurance and Loan Company v. Edwards, in the Court of Errors (26 Wend. R., 541-554), VERPLANCK, Senator, says that the ancient common law doctrine, as thus stated by the Chancellor in Merritt v. Lambert, is undoubtedly stated with precision. They both agree that the authorities cited by Judge WOODWORTH, in Jackson v. Crafts, were inaccurately applied to a case of payment after the day.
The next case in order of time, in our own courts, to that ofJackson v. Crafts, upon this question — if, indeed, that case can *Page 370 
fairly be regarded an authority upon the question — is Merritt
v. Lambert (supra), where the Chancellor held the doctrine contained in the above extract from his opinion to be still the law in this State.
Afterwards came the case of Edwards v. The Farmers' FireInsurance and Loan Company (21 Wend., 467), which was an action of ejectment tried at the Erie Circuit in July, 1837. The action was brought to recover certain premises which had been mortgaged by the plaintiff to the defendants as security for a loan, and which had been bought in by the defendants at a master's sale in pursuance of a decree of foreclosure of such mortgage, and duly conveyed to them by the master; and, subsequently, the plaintiff had tendered to the defendants the full amount of the moneys due upon the mortgage and the costs of foreclosure, which the defendants refused to receive, whereby the plaintiff contended, under the circumstances of the case, that he had become entitled to be restored to the possession of the premises. The plaintiff recovered a verdict, which the defendants moved to set aside and for a new trial. The motion was denied by the Supreme Court in July, 1839.
It is important to state, that the act incorporating the defendants (Laws of 1822, ch. 50, p. 42, c.), the second section of which authorizes the company to loan money on bond and mortgage, provides in the third section, among other things, "that, in all cases where the said corporation have become the purchasers of any real estate on which they have made loans, the mortgagors shall have the right of redemption of any such property on payment of the principal and interest and costs, so long as it remains in the hands of the corporation unsold."
The opinion of the court was delivered by Justice COWEN, who, after disposing of some preliminary questions in favor of the plaintiff, proceeds to say: "Then, what were the plaintiff's rights, as declared by this charter? I answer, that he had a legal statute right to redeem, so long as the property remained in the defendants' hands unsold; and this, notwithstanding the decree of foreclosure. I will put it that the defendants had made a legal and valid stipulation in their mortgage, that the *Page 371 
plaintiff might so redeem; for the charter shall be read as a part of their mortgage." The learned justice was willing to rest his decision upon that statement of the plaintiff's rights; regarding the statute as a part of the contract contained in the mortgage, by which the defendants agreed to receive the money whenever offered by the plaintiff, provided they had not sold the mortgaged premises, and that the law day continued as long as the premises remained in the hands of the defendants unsold. All that he says afterwards, is in answer to the objections by the defendants' counsel, that the law day was passed when the tender was made, and for that reason it gave the plaintiff no right of possession, c.; in which he attempts to show, that, assuming the tender to have been after the day, yet that it was as effectual for the purpose of working a release of the lien of the mortgage as if made on the day, and that the ancient common law rule on the subject was necessarily abrogated or modified by the change which had been wrought in the character of mortgages by modern legislation and adjudication. He came to the conclusion that a new trial should be denied. The case states that the Chief Justice (NELSON) concurred in that conclusion, and Mr. Justice BRONSON dissented. The case does not show that the court decided anything on the particular question under consideration. All that was decided was, that a new trial should be denied. Upon which of the two grounds stated by Judge COWEN the Chief Justice placed his concurrence, or whether upon both, does not appear. If he regarded the clause in the defendants' charter above referred to as an extension of the law day or of the time appointed by the parties within which the plaintiff was at liberty to pay, c., he must necessarily have concurred in the conclusion arrived at by Judge COWEN, whatever his views might have been on the other question. Nor does it appear upon what ground Judge BRONSON dissented. Excepting for the fact that there were other questions in the case, he must have differed from Judge COWEN upon both the grounds upon which he thought the action might be sustained; for if he thought either was tenable, he could not have dissented. So that it may well be, that *Page 372 
in the decision of the case a majority of the judges entertained the opinion that a tender after the day does not, per se,
discharge the lien of a mortgage. The case was afterwards taken to the Court of Errors, where the judgment of the Supreme Court was affirmed by a vote of eleven to nine. (26 Wend., 541.) Two opinions were written upon that decision; one by the Chancellor, for reversal, in which he adheres to his views upon the effect of a tender after the day as expressed in Merritt v. Lambert,
and the other by Senator VERPLANCK, for affirmance, in which he expresses his full concurrence in all the views and positions of Judge COWEN in the same case in the Supreme Court. The case does not show upon what grounds any of the members of the court, except the Chancellor and Senator VERPLANCK, based their decisions. All the votes for affirmance, except Senator VERPLANCK'S, might well have been on the ground stated by Judge COWEN in the court below. We see, therefore, that the case is no authority upon the precise question which we are called upon to decide in the case at bar.
The case of Arnot v. Post and others (2 Denio, 344), comes nearest to deciding the precise point now before us of any of the cases in this State, excepting those of Jackson v. Crafts, in the 18th of Johnson, and Merritt v. Lambert, in the 7th of Paige.
Arnot v. Post was an action of ejectment, tried at the Circuit in Chemung county, in May, 1843. The defendants were in possession of the premises as tenants of Simeon Benjamin, whose title was that of a purchaser at a foreclosure sale by advertisement under the statute, by virtue of a power of sale contained in a mortgage given by Joseph Vial and Uriah Smith, dated May 1, 1827, of which mortgage Benjamin was the assignee at and before the time of the foreclosure and sale. The purchase by Benjamin at the foreclosure sale was on the 23d of August, 1830. The money secured by the mortgage was all due in April, 1828.
Arnot, the plaintiff, claimed title by virtue of a purchase by him of the premises in question at a sale thereof by the sheriff on an execution issued upon a judgment against Vial and two *Page 373 
others, docketed August 6, 1827, and a deed from the sheriff in pursuance thereof. On the 21st of September, 1838, and after the deed from the sheriff to the plaintiff, which was dated in May, 1838, the latter tendered to Benjamin the principal and interest due on the mortgage, with the costs of the foreclosure, which Benjamin refused to receive. The Circuit Judge decided that the tender discharged the lien of the mortgage, and that the plaintiff was entitled to recover. The Supreme Court, in October, 1843, denied a motion for a new trial, and ordered judgment for the plaintiff.
In delivering the opinion of the court, BRONSON, Ch. J., takes the ground that the plaintiff was not affected in any respect by the statute foreclosure and sale to Benjamin; that the statute in force at the time of the foreclosure sale (2 R.S., 546, § 8), declared that subsequent mortgagees and judgment creditors should not be prejudiced by any such sale, nor should their rights or interests be in any way affected thereby; and that, therefore, the tender should have the same effect as if no such foreclosure had ever been had. In this, it seems to me, he was clearly right. As to Arnot, the judgment creditor, there had been no foreclosure. The Chief Justice then says: "It has always been held, that a tender at the day discharged the lien of the mortgage; and although a clear departure from the old law, it is fully settled in this State that a tender after the day will have the same effect." For this, he cites Jackson v. Crafts, andEdwards v. The Farmers' Loan and Insurance Company (supra). He admits that in the last case the law day was extended by the charter of the company, but contends that the broad principle was asserted, that a tender any time before foreclosure, although the law day had passed, would have the effect of discharging the lien of the mortgage.
I think I have shown, that, although the principle was asserted in the case, by COWEN, J., in the Supreme Court, and by VERPLANCK, Senator, in the Court of Errors, yet that the contrary was as broadly asserted, and that the case proves nothing with certainty on either side of the question.
This case of Arnot v. Post, which we are now reviewing, *Page 374 
was afterwards taken to the Court of Errors, where the judgment of the Supreme Court was reversed by a vote of eleven to nine. Upon the decision in the Court of Errors, seven written and two oral opinions were delivered. They were by Senators HARD, PORTER, JOHNSON, SEDGWICK, BOCKEE and CLARK for reversal, and the President of the Senate and Senators TALCOTT and LESTER for affirmance. Senator TALCOTT and the President put their decisions upon the same grounds as stated by the Supreme Court. The report of the case states that Senator LESTER delivered a written opinion in favor of affirmance, but upon what ground does not appear. It is presumed to have been the same as that of the Supreme Court, as I cannot conceive of any other.
Senator HARD, in his opinion, discusses the question whether the old rule, which requires a tender to be made on the law day in order to discharge the lien, was still the law of this State. He regards the authorities as somewhat conflicting, and the rule adopted by the Supreme Court of very questionable authority, and thinks the judgment of that Court not sustained by the cases referred to by Chief Justice BRONSON. His conclusion, as I understand, is, that where the tender is after the day, the only remedy of the owner of the equity of redemption is by a bill to redeem.
Senator PORTER makes no allusion in his opinion to the distinction between a tender before and one made after the law day as to its effect upon the lien of the mortgage, but places his decision upon the grounds that, under the particular circumstances of the case, the plaintiff's remedy, if he had any, was by a bill to redeem. JOHNSON, Senator, holds that an unaccepted tender after the day does not, per se, in any case discharge the lien of a mortgage. Senators SEDGWICK, BOCKEE, and CLARK concurred in the views of Senator JOHNSON.
I admit that this case, which I believe is the latest one on the subject in this State, does not prove conclusively that the admitted rule of the common law before repeatedly referred to is still the law of this State; yet its strong tendency is that way. In view of all our reported cases on the subject, the *Page 375 
most that can be said against it is, that it is at this day an open as well as a vexed question. The Court of Chancery has persistently adhered to it, as it was found to exist at the formation of the Government; and the Supreme Court has as strenuously insisted upon applying the same rule to the case of a tender after the day as all agree exists when the tender is made at the day.
My own opinion is, after a careful examination of the cases, that the weight of authority is in favor of the rule as it existed at the common law. If that rule has not been abrogated or modified, all will admit that it is the plain duty of the courts to follow and enforce it. Clearly there is no stare decisis in our way. It is of importance that the rule be definitely settled, and its boundaries defined. Before we hold a rule different from what we find it settled by the common law, we should require evidence that the rule has been changed by competent authority, either expressly or by necessary implication.
This evidence, the advocates of the change of the rule claim, is found in the changed character of a mortgage upon land, in consequence of various legislative enactments. We are told that when the rule of the common law in question was adopted, a mortgage conveyed a conditional estate in the premises, which entitled the mortgagee to possession, and upon which he could maintain ejectment; and that a mortgage does not now pass any estate in the land, but is merely the creation of a specific lien as security for the payment of a debt or the performance of a duty; and that the statute has taken away the right of the mortgagee to maintain ejectment. All this is true; and doubtless other shades of difference may be found between the legal effect of a mortgage at common law and as it now exists. But they will be found to relate to the remedy, or to consist in collateral or incidental circumstances. Mortgages are substantially what they always were. The fact that they are not now regarded as transferring the freehold, but are merely specific liens, is altogether theoretical and ideal, so far as respects the question under consideration. The great object of these instruments is the same now as it always was — that of security for the payment of money or the performance of a duty. A mortgagee *Page 376 
in possession is now, as always heretofore, accountable for rents and profits, and he may still defend his possession with the mortgage the same as ever. I know of no difference between the right of the mortgagor, or the person owning the equity of redemption, to redeem the premises from the lien of the mortgage, as that right now exists, and as it existed in the time of Coke or Littleton. That right is governed now by substantially the same rules as then.
The rule contended for by the plaintiff is reasonable, convenient and just. In the first place, the parties to the mortgage have, by agreement, fixed upon the time of payment and if the mortgagor fulfills his agreement by paying on the day appointed, or tendering payment on that day, the lien is discharged. The parties are then to be ready, the mortgagor to pay, and the mortgagee to receive. If the former performs his duty, or tenders performance, and the latter refuses, his lien is gone forever; he has no excuse for his folly, and is entitled to no consideration for the loss of his lien. On the law day, each party is presumed to know exactly what his duty is, and the amount the mortgagor is bound to pay and the mortgagee entitled to receive.
If the mortgagor allows the law day to pass without payment or tender, he then is a defaulter. If he can discharge the lien by a tender of payment the next day, there is no reason why he may not do the same by a tender after the lapse of one year or of ten years.
Suppose the mortgagee goes into possession under the mortgage, by consent of the mortgagor, immediately upon default of payment, and the latter takes no steps towards payment for years after; what amount shall he tender when he gets ready for payment? what abatement from the principal and interest shall be made for mesne profits? Shall the defaulting mortgagor be permitted to select his own time, and then make a tender of such an amount as he shall deem proper, and the mortgagee be bound to accept it in full, at the peril of losing his lien forever?
Suppose again the case of a defaulting mortgagor, who claims *Page 377 
to have made partial payments, or to be entitled to a set-off, about which he and the mortgagee in good faith differ: according to the rule claimed by the defendant, he must accept in full the amount tendered at the peril of losing his lien, provided, upon a litigation, it shall be adjudged that the tender was sufficient in amount. It seems to me that the old rule is the only just and wholesome one that can be recognized. It is quite as favorable to the mortgagor as he can in reason ask. If he makes a sufficient tender after the day and before an action is brought to foreclose the mortgage, let him keep the tender good, and, when he is sued, let him set it up as a defence, bring the money into court and offer payment as in other cases, and the court will, in such a case, decree the mortgage satisfied and discharged, and adjudge costs against the plaintiff. Or if for any reason the mortgagor, or the person whose duty or interest it may be to have the lien discharged, does not wish to wait the mortgagee's time for foreclosing, let him make his tender and keep it good, and then bring his action to redeem, alleging the tender and offering to pay; and if, upon the trial, it is found that his tender was sufficient and the plaintiff was ready to pay, the court would give him all the relief which equity and justice required. In all these cases, the mortgagee would have the right to have the disputed questions adjudicated, without losing his lien for the amount in equity and justice due to him.
The rule contended for by the defendant would, in many cases, operate as a bounty to negligent and defaulting debtors, and mortgagees would, under its workings, be induced to purchase their peace at an unjust sacrifice of their rights.
For the foregoing reasons, I am of the opinion that the rule of Littleton, as expounded by Coke, and as, all now admit, was the rule of the common law in relation to the effect of a tender after the law day, is still the law of this State; and as the tender in this case has not been kept good, and the defendant's answer contains no offer of payment, and the facts found by the court before whom the cause was tried do not show that the tender has in any sense been kept good, or that the defendant *Page 378 
was ready to pay, c., I think that he can have no benefit by reason of it; and that the judgment should be affirmed, with costs.
Judgment reversed.