## Post and others *vs.* Arnot.

A mortgage executed in 1827, was foreclosed by advertisement in 1830, and B. be-
came the purchaser at the sale. A judgment was docketed intermediate the
mortgage and the foreclosure, and upon a *fi. fa.* issued on this judgment after the
foreclosure, the premises were sold to A., who after receiving the sheriff's deed
tendered to B. the amount due on the mortgage with the costs of the foreclosure,
which he refused to receive. In ejectment by A. against the tenants of B., *held*,
that the plaintiff was not entitled to recover.

A tender to the mortgagee or his assignee *after the law day* does not operate to dis-
charge the lien of the mortgage. *Per* Hard, Johnson, Sedgwick, Bockee and
Clark, *Senators*.

A statute foreclosure does not change the remedy of a judgment creditor whose
judgment was docketed after the mortgage and before the foreclosure, and he
may notwithstanding sell the premises on execution. *Per* Gardiner, *President*,
and Talcott and Lester, *Senators;* Porter, Johnson and Sedgwick, *Senators*,
*contra*.

On error from the supreme court. Arnot brought ejectment
in the court below against Post and the other plaintiffs in error,
and obtained a verdict, which the defendants in that court
moved to set aside on a bill of exceptions. The motion was
denied, and judgment was entered on the verdict; upon which
the defendants bring error here. The facts, together with the
opinion of the court, are reported in 6 *Hill*, 65. The leading
facts upon which the questions of law arise may be briefly reca-
pitulated as follows. Both parties derived title from Joseph Vial,
who with Uriah Smith owned the premises and mortgaged
them to one Winans, in May, 1827, to secure the payment of
$600, payable by instalments, within about two years thereafter.
Simeon Benjamin by mean assignments became the owner of
this mortgage, and in 1830 foreclosed it by advertisement,
and became himself the purchaser at a price which left a con-
siderable surplus beyond the amount due and the costs of the
advertisement and sale. The defendants are his tenants.

In August, 1827, J. J. and C. V. J. Rosevelt recovered a
judgment against Vial and two other persons in the supreme
court for over $700, and in 1836 the premises in question were
sold by the sheriff of Chemung county by virtue of a *fi. fa.*

issued upon this judgment to the plaintiff below for $150, and he received a sheriff's deed dated in May, 1838. In September, 1838, the plaintiff tendered to Benjamin the principal and interest due on the mortgage with the costs of the foreclosure, which he refused to receive. The judge instructed the jury that the tender so proved discharged the lien of the mortgage and divested the title which Benjamin had acquired under the statute foreclosure, and that the plaintiff was entitled to recover. The defendants excepted to the charge and to the decision of the judge admitting the evidence of the tender.

*B. D. Noxon*, for the plaintiffs in error. 1. The statute (2 *R. S.* 546, § 8,) makes a foreclosure by advertising a bar to any equity of redemption of the mortgagor and of all claiming under him, by title subsequent to the mortgage; except mortgagees and judgment creditors who became such prior to the sale made pursuant to the advertisement. The plaintiff was neither a mortgagee nor a judgment creditor. By virtue of the sale under the judgment and his purchase and the sheriff's deed he became the grantee or assignee of Vial; and the interest which he sets up was foreclosed and extinguished by the statute foreclosure. The lien of the judgment was also extinguished by the sale.

2. If the plaintiff had a right to redeem, he could avail himself of such right only by bill in equity. A bare tender after foreclosure had no legal effect whatever. (*Merritt* v. *Lambert*, 7 *Paige*, 344; *Vroom* v. *Ditmas*, 4 *id.* 526; *Benedict* v. *Gilman, id.* 58; *Van Buren* v. *Olmstead*, 5 *id.* 9; *Klock* v. *Cronkhite*, 1 *Hill*, 107.)

3. A tender of the money due on a mortgage, after the day of payment has passed, does not discharge the lien. (*Merritt* v. *Lambert, supra.*)

*J. A. Collier*, for the defendant in error. The statute foreclosure under which the defendants claimed title did not impair or affect the junior judgment under which the plaintiff subsequently purchased. That judgment was, prior to the foreclosure, a valid lien upon the premises; and as it was not "in

Post *v.* Arnot.

any way affected" by the foreclosure, it remained such lien after the foreclosure had taken place. One of the essential attributes of a lien by judgment is the power of the judgment creditor to procure the real estate which is affected by the lien to be sold for the payment of the judgment debt. It cannot be correct to say that the rights and interests of the judgment creditor are *not prejudiced* or *in any way affected* by a transaction which destroys the power to sell altogether, and which changes the legal authority to proceed by execution into a mere right to redeem in equity. The plaintiff therefore by his purchase on the execution became the owner of the premises subject to the prior mortgage, which was, as to him, unforeclosed.

Upon well settled principles the tender which he subsequently made of the whole amount due discharged the lien of the mortgage and entitled the plaintiff to recover. (*Jackson v. Crafts*, 18 *John*. 110; *Edwards* v. *The Farmers' Fire Ins. & L. Co.* 21 *Wend*. 467; *S. C. in error*, 26 *id*. 541.)

HARD, Senator. It is undoubtedly a well settled principle that a tender at the day, of the amount secured by a mortgage upon lands, extinguishes the lien. It has been decided in this state, although the principle is a departure from the ancient law, that a tender *after the day*, and before foreclosure, discharges the lien. But where the mortgage has been foreclosed there is no authority for saying that a tender to the purchaser under the foreclosure will extinguish his title. The case of *Jackson* v. *Crafts*, (18 *John*. 110,) referred to in the opinion of the court below does not contain any such feature. The tender to which effect was given in that case was made before foreclosure, and the sale which was subsequently made pursuant to advertisement, was held to be irregular and fraudulent. It is true that the broad proposition was laid down that a tender after the day extinguishes the mortgage. This has however been decided the other way by the chancellor, (*Merritt* v. *Lambert*, 7 *Paige*, 344,) and the doctrine is certainly a questionable one. The case of *Edwards* v. *The Farmers' Fire Ins. & L. Co.* (21 *Wend*. 467) is also relied upon in the opinion of the supreme

·court.   In that case a tender after a foreclosure sale was held to discharge the lien.   But there was a marked distinction between that case and the present.   The mortgagee there was a corporation, by the charter of which it was provided that the mortgages which it should take should be made payable in not less than one year, but no foreclosure could take place within five years if the interest should be punctually paid; and even after foreclosure, if the premises should be purchased by the corporation, they were declared to be subject to redemption while they remained in its hands unsold; and besides, if the mortgagee neglected to dispose of the property so purchased within five years it was forfeited to this state.   (*Stat.* 1822, *p.* 48, § 3.) It was held that the day of payment was virtually extended so as to embrace the whole period during which the corporation kept the property, and consequently that a tender made at any time prior to a sale by them was as effectual as though made on the day named in the mortgage.   I think therefore that the judgment of the supreme court is not sustained by the authorities to which the present chief justice has referred.

The saving provision in the eighth section of the statute concerning mortgages was designed to protect the rights of incumbrancers intervening between the execution of a mortgage and the time of its foreclosure by advertisement, upon the assumption that upon such a foreclosure the incumbrancer would not necessarily have any personal notice of the proceeding.   But the saving was not designed to enlarge the rights of the incumbrancers, nor to abridge those of the mortgagee.   In the opinion of the supreme court it is said that the effect of such a foreclosure, as to an intervening mortgagee or judgment creditor, is only equivalent to the assignment of the mortgage so foreclosed to the purchaser at the sale.   This doctrine would, I think, produce very injurious consequences to the parties interested in the first mortgage.   Should the mortgagee, or his assignee in this case, become the purchaser under a foreclosure, though he would be entitled to be let into possession, he would have no further claim against the mortgagor, (whose liability to the extent of the amount bid would be discharged,) and yet he

would be liable to be turned out at any time upon being tendered the amount due upon the mortgage, without any compensation for even permanent improvements, which would enure to the benefit of the parties holding the junior lien, or any return of the surplus which he had paid to the mortgagor beyond the sum due on the mortgage. I suppose the object of the legislature, in the saving provision referred to, to have been to save the junior incumbrancers from the consequences of having a hasty sale made by virtue of the prior lien without notice to them, and that the effect of the provision is to subrogate the junior incumbrancers for the mortgagors, and also to change the character of the intermediate liens from legal into equitable ones. (*Merritt* v. *Lambert, cited supra*.) The junior lien is in this manner preserved; but it cannot be enforced by barely tendering the money due on the older mortgage, for this would not *ipso facto* transfer the title discharged of the prior lien. The proper remedy is by bill in equity, where equitable conditions may be imposed and the interests of all the parties can be protected. Prior to the sale on the judgment the statute afforded the Rosevelts, the judgment creditors, an adequate remedy. That sale could have no other effect than to constitute the plaintiff below, who became the purchaser, the assignee of those judgment creditors, with power to redeem in a proper mode, which I have before pointed out. I am of opinion that the judgment of the supreme court should be reversed.

PORTER, Senator. The question in this case is whether, when a mortgage has been foreclosed according to the statute, by advertisement, and the premises are subsequently sold by virtue of a judgment docketed intermediate the mortgage and the foreclosure, and the purchaser on execution has tendered to the purchaser upon the foreclosure, the amount due upon the mortgage and the costs of foreclosing, the title derived under the mortgage is thereby extinguished. The supreme court have held that it is. They hold that the statute foreclosure amounts, as against the judgment creditor, to nothing more than an assignment of the mortgage, and that it does not affect the lien

of the judgment upon the mortgagor's equity of redemption, or the manner in which that lien is to be enforced; and that the purchaser at the sheriff's sale in this case acquired the legal title and consequently the right to redeem.

This decision I think gives a new view of the statute relating to the foreclosure of mortgages. It is not moreover based upon any prior authority, but rests solely upon the reasoning by which it is accompanied. As the case is one which may be expected frequently to occur, and as the conclusions at which I have arrived differ from those of the supreme court, I approach the discussion with no little diffidence. To present an intelligent view of the question, it will be necessary to consider the respective rights of the mortgagor, mortgagee and judgment creditor in the premises, and their several estates and liens; and if there is an agreement in opinion in these particulars, all must arrive at the same conclusion. Although the mortgagor in terms conveys the estate to the mortgagee in fee simple, to become void upon the performance of a condition, yet the law deems the mortgage only a specific lien, for the security of the money mentioned in the condition. The legal title to the premises remains in the mortgagor. Though his interest is denominated an equity of redemption, that name is used rather to indicate the proceedings he is required to pursue to remove the incumbrance, than as a definition of his estate. He is in truth the tenant of the freehold, and the mortgage is in effect a power of attorney to the mortgagee, authorizing him upon the non-performance of the condition mentioned, to sell and convey the premises. This sale, by virtue of this power and the statute, carries the absolute estate to the purchaser, if there are no other liens.

In this case the Rosevelt judgment became a lien upon the title of the mortgagor, younger than the mortgage. The plaintiffs in the judgment could have proceeded immediately to sell the estate of the mortgagor, and the purchaser would then have acquired the whole title, subject to the mortgage. He would have stood in the place, and have acquired all the title and interest which the mortgagor had immediately after he gave the

mortgage, that is, what is termed the equity of redemption. He could then have redeemed the premises from the mortgage lien, by the tender of the mortgage debt and interest. But instead of doing this, he lies by for many years, and until the lien of his judgment has nearly expired, and until after the statute foreclosure of the mortgage; and then seeks to enforce his rights in the same manner that he might have done before the foreclosure.

By that foreclosure the purchaser acquired all the right and title of the mortgagor and mortgagee in the premises. He acquired the absolute fee, subject to the lien of the judgment creditor. The supreme court says he acquired nothing more as against the judgment creditor than an assignment of the mortgage. Let us test this idea by some admitted principles. As assignee of the mortgage he could not be called in law the owner, nor be deemed to be possessed of the title in fee. But it is a fundamental principle of law in respect to real estate, that the fee must at all times be vested in some one. After a foreclosure it is no longer in the mortgagor, for all his interest has passed to the purchaser. It certainly is not in the judgment creditor. It can be found no where but in the purchaser, for it is not a case in which it can be in abeyance. If then the title in fee has ssted in the purchaser, he becomes something more than a mere assignee of the mortgage. Again, suppose the premises had been sold after the statute foreclosure, upon a judgment older than the mortgage. The law gives the owner of the premises a right to redeem them from the sale under the judgment, at any time within a year from the sale. Now, before the sale on the Rosevelt judgment, who would have been entitled as owner to redeem from a sale under the elder judgment? No one, certainly, but the purchaser at the statute foreclosure. The fee must be in him, and he must be deemed owner, as to all the world. The "rights and interests" of the junior judgment creditor, which the statute declares "shall not be in any way affected thereby," are not affected by thus determining that the fee passed to the purchaser upon the foreclosure. He holds the title subject to the right of the judgment creditor to enforce his claim against the equity of redemption which was bound by his judgment. But

Post v. Arnot.

this must be done in a court of equity. He has not been foreclosed; but the effect of the sale is to transfer to the purchaser the fee, which embraces the rights of the mortgagee and mortgagor, subject only to the right of Rosevelt to redeem in equity.

We have seen that if Rosevelt had sold before the foreclosure, the purchaser would have acquired the fee, subject to the mortgage. But selling after the foreclosure, what right or interest does he sell? He does not sell the right of the mortgagor, which right is the equity of redemption; for that is gone effectually, having been sold and transferred on the mortgage sale. The statute declares that such shall be the effect of that sale; and there can be nothing left pertaining to the mortgagor, to be affected by the sale. The sheriff doubtless offered for sale the right and title of the mortgagor in the premises. I may ask, I think, with some confidence, had he any conceivable right, title or interest therein capable of being sold on execution? Rosevelt had a lien upon Vial's equity of redemption, which he might have sold, so long as that equity of redemption remained. But when that was gone, there was nothing to be sold on the judgment. Rosevelt's lien was not the subject of sale; but it was Vial's equity of redemption that might have been sold; and the right that Vial then had in the land, was all the purchaser under the judgment acquired. That right had before been extinguished; and of course he purchased nothing. It seems to me that there is no longer any interest to sell after foreclosure; and that such a proceeding can result in nothing.

Again, the supreme court say, "Arnot, as purchaser under the judgment, has acquired all the interest which the mortgagor had before the foreclosure." The mortgagor had the right of redemption against the mortgagee; then Arnot had the same right against the purchaser at the mortgage sale. Arnot was the purchaser under the judgment; and it will not be denied I think that the purchaser at the mortgage sale was the owner of the premises within the meaning of the statute authorizing a redemption of lands sold on execution, and as such was entitled to redeem them from the sale under the judgment within a year. Here then we have the purchaser at the mortgage sale

recognized as owner, and acquiring rights as owner, and against the proceedings of the judgment creditor; and in the same breath it is said, that the purchaser under the judgment may treat him as the mere assignee of the mortgage, and consider himself as the "owner of the land, subject to the incumbrance of the mortgage." These two positions cannot stand together; and I cannot think that a fair construction of the statute would involve so great an inconsistency.

There is manifest justice and propriety in so construing the statute, as to limit the remedy of the judgment creditor after a statute foreclosure, to a redemption in equity. No violence is done to the saving clause of the statute, for all the creditor's rights are preserved. His right extends no further than to have the value of the premises, after satisfying the prior incumbrances, applied to the payment of his debt. And this is secured to him by the proceeding in equity. While to permit a creditor to lie by, as in this case, eight years after the statute foreclosure, and then to sell the premises, after all the changes to which real estate is subjected in this country of enterprise and improvement, when the value of it may have increased many fold, might result in great injury to a *bona fide* purchaser. But if the creditor is required to go into chancery to redeem, the equities between the parties may be investigated, and full justice done. Courts of law do not possess the power to adjust such conflicting claims and equities.

The views taken by the chancellor of this subject, so far as they have been expressed, are not in accordance with those of the supreme court. In *Benedict* v. *Gilman*, (4 *Paige*, 61,) he says, "Under a statute foreclosure, if there are judgments subsequent to the mortgage, which remain upon the property at the time of the sale under the statute, the purchaser takes the whole legal and equitable interest in the property, as against the mortgagor, and all persons claiming under him; subject, however, to the equitable right of the judgment creditors to redeem in the same manner as if such foreclosure had not taken place." So in *Vroom* v. *Ditmus*, (4 *Paige*, 531,) he remarks, that the title which the purchaser acquires under a statute fore-

closure "is subject of course to the right of any intermediate incumbrancer by mortgage or judgment, to redeem the premises." He uniformly speaks of the right of a judgment creditor in such a case, as one of redemption, and would appear to limit the right to that of redemption. The suggestion of a right to sell the premises on execution under such circumstances, is not to be found, I apprehend, in any adjudged case.

But there is another view of this case which presents difficulties in the way of the plaintiff below, that appear to me to be insurmountable. Arnot, the plaintiff below, *claims under Vial*, the mortgagor, and therefore is not within the saving clause of the statute, but is expressly *barred* by it. The statute bars " the mortgagor, and all persons claiming under him, by virtue of any title subsequent to such mortgage." Does not Arnot claim under the mortgagor ? Suppose Rosevelt had sold Vial's equity of redemption upon the judgment *before* the mortgage foreclosure, and Arnot had become the purchaser. There can be no question but that he would have made his claim under Vial's title. He might have insisted upon his right to redeem the mortgage as the owner of Vial's title ; and I think no one would have been bold enough to have denied his right as one claiming under Vial. In this case he purchased, as he insists, the same right of Vial after the statute foreclosure. Does he not make claim under Vial in the same manner, in the same right, and to the same extent, that he would have done had the sale taken place before the foreclosure? I am unable to distinguish between the two. In both, the same title of the same individual, it is said, is sold, and upon the same judgment, and the purchaser in both cases must stand in the same situation, in respect to the derivation of his title. Arnot therefore claims under Vial, and can have no more right than Vial himself. In *Klock* v. *Cronkhite*, (1 *Hill*, 107,) it was held that the purchaser of mortgaged premises, under a sale made before the foreclosure on a judgment younger than the mortgage, " stood in the character of grantee or assignee of the mortgagor, and as such he was foreclosed of all equity of redemption." The court said, " the statute has no saving clause in favor of those who have

acquired the title, or equity of redemption of the mortgagor; it only saves other mortgagees and creditors having a lien by judgment or decree." All agree that this view of the statute is correct. But in the case under consideration the supreme court say that the rule there laid down is not applicable, because there the purchase under the judgment was made before the foreclosure, and in this case after the foreclosure. I find no authority for any such distinction. The language of the statute is, that every statute foreclosure "shall be equivalent to a fore-closure and sale under a decree of a court of equity, so far only as to be an entire bar of all claim or equity of redemption of the mortgagor, his heirs and representatives, and of all persons claiming under him, or them, by virtue of any title subsequent to such mortgage." It is not that those only shall be barred who purchase the mortgagor's title before the foreclosure; but it embraces "all persons claiming under him." There is no dispute but that Arnot derives all the title he possesses through and under Vial, the mortgagor. The supreme court say that he, "as purchaser under the judgment, has acquired all the in-terest which the mortgagor had before the foreclosure." I have wholly failed to find any foundation in the statute for the re-mark, that the statute saves the rights of Arnot because he pur-chased *after* the foreclosure. And if I have not overlooked any provisions on the subject, there cannot, I think, be a pretence for saying that Arnot's rights are within the saving clause of the statute. He comes expressly within the enacting clause, and is barred of all right, as one holding under the mortgagor. The remarks I have made under this second point, are confined to the title Arnot acquired, if any, as purchaser under the judg-ment, and as such he can derive no aid from the saving clause in the statute.

I will now consider his claim to be a *creditor* of Vial, and as such entitled to the protection of the statute; for it is clear that the rights of "any creditor, to whom the premises were bound by any judgment at law," are saved by the statute. The Rosevelts were the creditors to whom the statute points in this case. Before the sale on their judgment they had a mere lien

and if they had sought to enforce their right they must have gone into equity. But it is now insisted that the plaintiff, as the purchaser under the judgment, can claim to be treated as a creditor, and is entitled to the advantage of the saving provision of the statute; that is to say, that there is such a connexion between the rights of the Rosevelts and Arnot, that the latter can set up in this suit all the rights which the former ever had as judgment creditors. All the rights that Arnot acquired, he obtained by the purchase. Now what did he purchase? Certainly not the judgment. That was not offered for sale. He bought the interest of Vial in the land, not the right of the Rosevelts to redeem. To have acquired that right he should have taken an assignment of the judgment. As such purchaser he succeeded to the rights of Vial and to no other rights whatsoever. If the sale had taken place before the foreclosure, it is agreed that Arnot would have acquired simply the rights of Vial. I perceive no difference in this respect, whether the sale is before or after the foreclosure. In no case can he as purchaser acquire the rights which the creditor possessed before the sale.

But there is another inquiry connected with the question I have last considered. Was there any judgment creditor in existence, so far as these premises are concerned, after the sale on execution? The Rosevelts could not after the sheriff's sale redeem by virtue of their lien upon the equity of redemption of Vial, for, as the plaintiff claims, they had sold that equity on execution. A sale of land under an execution extinguishes the lien of the judgment. (2 *Wend.* 297; 8 *Johns. R.* 334; 4 *Cowen,* 417; 7 *id.* 21.) The Rosevelts, therefore, ceased to be judgment creditors, "to whom the mortgaged premises were bound," when they sold on their judgment; and had no longer any rights which came within the saving clause of the statute. If the plaintiff had any rights which are protected by the statute, they are derived through the Rosevelts as judgment creditors; and it follows, necessarily, that if their rights in that character are gone, those set up by the plaintiff must fail also. I cannot, however, perceive that he acquired any rights in that

manner; but if others can, they certainly fall with those of the Rosevelts. Take the case of a junior judgment creditor; if there is a sale on the prior judgment, he may redeem and thereby save his lien. But if he sells the premises on his judgment before the expiration of the time of redemption, he is no longer entitled to redeem as a judgment creditor, and it is equally clear that the purchaser cannot redeem in that character. If he wishes to redeem, he must come forward within the twelve months and effect the redemption as owner.

I am therefore of the opinion that the plaintiff below failed to show any title to the premises in question, and that the judgment of the supreme court ought consequently to be reversed.

JOHNSON, Senator. I shall first consider the question, whether an unaccepted tender to the creditor by one entitled to redeem a mortgage, made after the *law day*, will extinguish the lien of the mortgage. Although the court below has given that effect to such a tender, yet it seems to be admitted by the judge by whom the opinion was pronounced, that it was a departure from the ancient law. In *Jackson v. Crafts*, (18 *John.* 110,) relied upon by the supreme court, the plaintiff made title under a mortgage which had been foreclosed by advertisement; and an important question presented was, whether the foreclosure had been fairly and regularly made. This was determined against the plaintiff. The defendant also relied upon a tender made long after the money had become due and on the day preceding the sale on the foreclosure, as discharging the lien of the mortgage. Such tender was proved to have been made and refused, and the court held that it extinguished the mortgage as an incumbrance upon the property. For this position Mr. Justice Woodworth, who delivered the opinion of the court, referred to *Co. Litt.* 207, *a*, 209, *b*, §§ 335, 338. Littleton, in the section first mentioned had said that if a mortgagor should tender the money and the mortgagee should refuse to receive it, and then the mortgagor should enter, the mortgagee would have no remedy. Coke, in his Commentary, quotes some of the words of the section and remarks: " Here

is implied, *at the due time and place,* according to the condition." The doctrine in Bacon and Viner, also referred to by Mr. Justice Woodworth, is based upon the passage in the *institutes,* and does not carry the rule any further than is there stated. It is apparent, therefore, that the decision in *Jackson* v. *Crafts,* as regards the question under consideration, arose out of a misapprehension of the effect of the older authorities. The other case relied upon by the supreme court for the judgment under consideration, is *Edwards* v. *The Farmer's Fire Ins. & L. Co.,* (21 *Wend.* 467,) affirmed by this court on error. (26 *id.* 541.) The question I am now considering did not necessarily arise in that case, for the law day was enlarged by a particular statute for the regulation of the corporation who were mortgagees so as to cover the whole time during which they should retain the land unsold after their purchase upon the foreclosure. Indeed I do not understand the counsel for the mortgagor to have insisted, when that case came before this court, that an unaccepted tender after forfeiture in the case of an ordinary mortgage would have discharged the lien. It was put by them distinctly on the ground that the law day was extended by force of the provision in the act of incorporation; and although a learned member of the court laid down the rule in accordance with the opinion delivered in the supreme court, it by no means follows that such was the opinion of any other member who voted for affirmance. As it was quite unnecessary to pass upon that question, the case cannot be considered as an authority for the position in question. I think, therefore, it may be safely assumed that there is no binding authority requiring us to hold that a mere tender after the day of payment has passed, will have the effect of discharging the lien.

It has been said that there is no reason why a distinction should be made between a tender before and one after the law day. A reason of some force may, however, be found in the fact, that in the former cases the money is offered on the very day agreed upon by the parties, and that the mortgagee has not contracted to accept it if tendered afterwards. Besides, a tender for improvements cannot be made, the amount being from the nature of the case unli-

quidated. The maxims of a court of equity allow of a dispensation with the strict rule as to the time of payment, and authorize a redemption at any time before foreclosure, upon such equitable terms as the circumstances of the case may render just. (*Benedict* v. *Gilman*, 4 *Paige*, 61.) In this case, Benjamin, the purchaser under the statute foreclosure, paid more than four hundred dollars beyond the amount due on the mortgage. This is of itself strong evidence that he was ignorant of the existence of the judgment under which the plaintiff claims title. The plaintiff paid but $150, for which he obtains land which cost $775, together with all the improvements since made, if he can sustain the position that the bare tender is sufficient to destroy the mortgage; and a court of law has no means of modifying the relief, or of exacting conditions by way of compensation. In *Merritt* v. *Lambert*, (7 *Paige*, 344,) the present learned and able chancellor held that an unaccepted tender after the law day did not extinguish the lien of the mortgage.

[Senator JOHNSON then discussed at length the question as to the effect of the sale on execution, after the statute foreclosure, and came to the conclusion that the purchaser upon that sale acquired no greater rights than the judgment creditor possessed before the sale; and that as a judgment creditor (supposing him to be entitled to that character by subrogation,) he could not acquire title in himself by tendering the amount of the mortgage to the purchaser upon the foreclosure.]

Upon both grounds, therefore, I am of opinion that the judgment of the supreme court ought to be reversed.

Senator SEDGWICK delivered a written opinion concurring substantially in the conclusions arrived at by Senator JOHNSON.

Senators BOCKEE and CLARK delivered verbal opinions in favor of reversing the judgment of the supreme court, on the ground that the tender after the law day did not discharge the lien of the mortgage.

TALCOTT, Senator. By the statute foreclosure of the mortgage in question the purchaser acquired all the interest which

Post *v.* Arnot.

the mortgagors had in the premises, and also the interests of all persons claiming under them by virtue of any title subsequent to the mortgage, with the exception of junior incumbrancers whose liens upon the mortgaged premises had accrued intermediate the execution of the mortgage and the sale under the foreclosure. (2 *R. S.* 546, § 8.) The rights and interests of this last class of persons were in no respect affected by the statute foreclosure. Had the lien of any such incumbrancer been converted into a legal title by a sale under his mortgage or judgment before the foreclosure of the prior mortgage, such title would have been divested by the legal effect of the foreclosure. The statute only protects those interests which exist in the shape of incumbrances by mortgage or judgment at the time of the sale under the foreclosure, and expressly cuts off all *titles* acquired under the mortgagor during the intermediate period between the mortgage and the foreclosure. (*Klock* v. *Cronkhite*, 1 *Hill*, 107.) The judgment under which the plaintiff claims title was docketed after the mortgage and before the foreclosure, and it had not ripened into a title until after the sale on the foreclosure. It therefore belonged to the class of incumbrances protected by the terms and spirit of the statute; and the judgment creditor cannot be *prejudiced* nor can his rights or interests *be in any way affected* by that proceeding. This strong language precludes the idea of giving to the foreclosure any effect which shall take from the creditor any of his rights or remedies, or which shall prevent him from availing himself of his judgment, in any way which it would have been lawful for him to do, if such foreclosure had not taken place. A judgment docketed in a court of record is a legal incumbrance and carries with it a right to sell the land for the satisfaction of the debt; and such sale if not redeemed from divests the title of the judgment debtor, and all titles and liens under him subsequent to the docketing of the judgment. This right the judgment creditor in this case had at the time of the sheriff's sale at which the plaintiff became the purchaser. To hold otherwise would contradict the express provisions of the statute.

The right which the plaintiff acquired by his purchase on

the execution was co-extensive with the lien of the judgment. It was the ownership of the land subject of course to all liens of older date than the judgment. The title thus acquired over-reached the sale upon the statute foreclosure and vested in the purchasers all the rights which the judgment debtors had at the time of the docketing of the judgment, among which was the right of extinguishing the prior liens in any manner which it would have been lawful for the debtors to have pursued before their rights were affected by the foreclosure. At the time the lien of the judgment attached, the mortgage was simply a specific lien, subject to be extinguished by the payment of the debt which it was given to secure.

The effect of the foreclosure under the statute was to transfer to the purchaser all the interest of the mortgagee and his assigns in the premises, saving the rights of the junior incumbrancers. The purchaser at the mortgage sale was therefore the owner of the mortgage, and was the proper person to be applied to by the owner of the equity of redemption for the purpose of redeeming the premises from the lien of the mortgage.

The tender of the mortgage debt and interest was as effectual in divesting the lien of the mortgage as its payment would have been; and the costs of the foreclosure need not have been included in the tender. (*Burnet* v. *Denniston,* 5 *John. Ch. R.* 35 ; *Jackson* v. *Crafts,* 18 *John.* 110 ; *The Farmers' Ins. & Loan Co.* v. *Edwards,* 26 *Wend.* 541.) These cases also hold that a tender will discharge the lien of the mortgage though not made until after the law day, and that doctrine is in accordance with the theory of mortgages now well established by a series of recent decisions. It is now well settled in this state, that a mortgage is no longer a conditional conveyance, but a mere security for the payment of money, by which the party taking it acquires no other rights than such as are necessary to enable him to attain the real object for which the security was given. The sale of the property is a measure sometimes necessary to the collection of the debt; but when the debt is voluntarily paid or tendered before the sale, the end which the parties had in view at the giving of the mortgage is attained, and the mortgagor ought

Post *v.* Arnot.

afterwards to hold the property divested of the lien. I am there-fore of opinion that the judgment of the supreme court ought to be affirmed.

GARDINER, President. The judgment under which the plaintiff claims to have acquired title was a lien upon the prem-ises when it was recovered. This lien authorized the judgment creditor to sell the equity of redemption of his debtor and thus acquire the legal title thereto, and then to redeem the mortgage which was a prior lien upon the premises. That such were his rights prior to the foreclosure is conceded. The statute under which that foreclosure took place declares that such encum-brancers shall not be prejudiced, "nor shall their rights and interests be *in any way affected*" by a sale made pursuant to such a foreclosure. This is, in effect, declaring that the right to sell upon the judgment shall not be in any way affected. The de-fendants insist that the particular right to sell, which is certainly one of the most prominent, important and beneficial rights which a judgment confers upon the creditors, is cut off or trans-formed into a very different right, that of redeeming in equity. To substitute for the legal right to sell, the equitable right to redeem, affects, it seems to me, in a very material manner, the rights of the creditors under the judgment. I fully agree with the supreme court, that this cannot be done by a statute fore-closure.

I also concur with the supreme court upon the other questions discussed in the able opinion then delivered by the present chief justice, and shall accordingly vote in favor of affirmance.

Senator LESTER also delivered a written opinion in favor of affirming the judgment of the supreme court.

On the question being put, "Shall this judgment be reversed?" the members of the court voted as follows:

*For reversal:* *Senators* BEERS, BOCKEE, CHAMBERLAIN, CLARK, EMMONS, HAND, HARD, JOHNSON, PORTER, SEDG-WICK and VARNEY—11.

*For affirmance:* The PRESIDENT, and *Senators* BACKUS, DEYO, LESTER, MITCHELL, SCOVILL, SMITH, TALCOTT and WRIGHT—9.

Judgment reversed.